UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Mark J. Politan
**POLITAN LAW, LLC**
88 East Main Street, #502
Mendham, New Jersey 07945
(973) 768-6072
mpolitan@politanlaw.com

*Counsel to the Debtors*

---

In Re:

PANKAJ and VARSHA DESAI,

                Joint Debtors.

Case Nos.: 22-11049 (JKS)

Chapter: 11
Subchapter V Small Business

## SMALL BUSINESS DEBTORS' PLAN OF REORGANIZATION

       This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Pankaj and Varsha Desai (the "Debtors"), and to seek your vote to accept the Plan.

       You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

       **IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY NO LATER THAN SEVEN DAYS PRIOR TO THE CONFIRMATION HEARING.**

       **YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY NO LATER THAN SEVEN DAYS PRIOR TO THE CONFIRMATION HEARING. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: MARK J. POLITAN, ESQ., POLITAN LAW, LLC, 88 EAST MAIN STREET, MENDHAM, NEW JERSEY 07945.**

       **A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ (TBD) IN COURTROOM OF THE HONORABLE JOHN K. SHERWOOD AT THE UNITED STATES BANKRUPTCY COURT, 50 WALNUT STREET, NEWARK, NEW JERSEY 07102**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Dated: May 10, 2022

**POLITAN LAW, LLC**
Mark J. Politan, Esq.
88 East Main Street
Mendham, New Jersey 07945
973.768.6072
mpolitan@politanlaw.com

## TABLE OF CONTENTS

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITOR**     3

**ARTICLE 1:  HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR**     3
1.1    Nature of the Debtors' Business     3
1.2    History of Business Operations of the Debtors     3
1.3    Filing of the Debtors' Chapter 11 Case     3
1.4    Legal Structure and Ownership     3
1.5    Debtors' Assets     3
1.6    Debtors' Liabilities     3
1.7    Current and Historical Financial Conditions     4
1.8    Events Leading to the Filing of the Bankruptcy Case     4
1.9    Significant Events During the Bankruptcy Case     4
1.10   Projected Recovery of Avoidable Transfers     5

**ARTICLE 2:  THE PLAN**     5
2.1    Unclassified Claims     5
2.2    Classes of Claims and Equity Interests     7
2.3    Estimated Number and Amount of Claims Objections     10
2.4    Treatment of Executory Contracts and Unexpired Leases     10
2.5    Means for Implementation of the Plan     10
2.6    Payments     11
2.7    Post-Confirmation Management     11
2.8    Tax Consequences of the Plan     11
2.9    Projections in Support of Debtors' Ability to Make Payments Under Proposed Plan     12

**ARTICLE 3:  FEASIBILITY OF PLAN**     12
3.1    Ability to Initially Fund Plan     12
3.2    Ability to Make Future Plan Payments and Operate Without Further Reorganization     12

**ARTICLE 4:  LIQUIDATION ANALYSIS**     13

**ARTICLE 5:  DISCHARGE**     13

**ARTICLE 6:  GENERAL PROVISIONS**     14
6.1    Title to Assets     14
6.2    Binding Effect     14
6.3    Severability     14
6.4    Retention of Jurisdiction by the Bankruptcy Court     14
6.5    Captions     14
6.6    Modification of Plan     15
6.7    Final Decree     15

**ARTICLE 7:  ATTACHMENTS**     15

**ARTICLE 8:  FREQUENTLY ASKED QUESTIONS**     15

**ARTICLE 9:  DEFINITIONS**     17

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITOR

The Debtors propose a five (5) year plan funded by all of the Debtors' projected disposable household income. The Debtors propose 20 quarterly disbursements to priority and general unsecured creditors. Secured claims will be paid pursuant to their underlying notes and will be unimpaired. General unsecured creditors will receive 20 quarterly *pro rata* distributions of the Debtors' disposable household income which includes a proposed balloon payment upon the expiration of the five years for any outstanding amount due equal to the proposed dividend.

## ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtors' Business.

The Debtors are married individuals who have filed this case jointly. Pankaj Desai and Varsha Desai are co-owners of SONALI ENERGEES USA LLC, an entity which is a solar panel importer and distributor (the "Corporation"). Pankaj Desai is the President of the Corporation. Varsha Desai is employed by the Closter Borough Public Library. The Debtors and their two (2) adult children reside at 39 Walker Avenue, Closter, New Jersey 07624.

### 1.2.    History of Business Operations of the Debtors

Pankaj Desai is employed as the President of the Corporation since 2012 and Varsha Desai is employed as an administrative assistant for the Closter Borough Public Library since 2007.

### 1.3    Filing of the Debtors' Chapter 11 Case.

On February 9, 2022 the Debtors filed a joint voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey before the Honorable John K. Sherwood, U.S.B.J. Nancy Isaacson has been appointed the Subchapter V Trustee (the "Trustee").

### 1.4.    Legal Structure and Ownership.

The Debtors are individuals.

### 1.5.    Debtors' Assets.

The Debtors' personal property and values are identified on the Debtors' Schedules A and B of the petition and are summarized on **Exhibit A**.

### 1.6.    Debtors' Liabilities.

The Debtors' Liabilities are evidenced by Debtors' Schedules D, E, and F of the petition

and are summarized on **Exhibit B**.

### 1.7.     **Current and Historical Financial Conditions.**

The Debtors' total current household income is approximately $8,700.00 per month on average. The Debtors' household's income is derived from Pankaj Desai's employment at the Corporation and Varsha's Desai's employment at the Closter Public Library. The Debtors' income has been and will be supplemented by increases in salary from the Corporation over the term of the Plan and the subletting of an available room in their primary residence to an extended family member or member of their community on or before the Effective Date.

Pankaj Desai has co-owned and worked for the Corporation since 2010 and Varsha Desai has worked with the Borough of Closter Public Library since 2007. The Debtors project sufficient income to support this reorganization as reflected in monthly operating reports filed with the Court to date, the schedules filed and the financial projections contained on **Exhibit C.** The Debtors' projected net disposable monthly income as of the Petition Date was $1,690.48 as reflected in the Debtors' Schedules I and J and which has increased during the post-petition period with adjustments to salary from the Corporation, and projects to further increase to approximately $3,900.00 over the life of the Plan.

### 1.8.     **Events Leading to the Filing of the Bankruptcy Case.**

The Debtors' Chapter 11 filing was precipitated by the entry of summary judgment in litigation pending in the United States District Court for the District of New Jersey in favor of Bank of America, N.A. ("BOA") in the approximate amount of $2,150,824.43. The judgment was entered against the Debtors as guarantors of a business loan made to and for the benefit of the Corporation. Judgment was also entered against the Corporation as the primary obligor, however, the Corporation, co-owned by the Debtors, has not filed any voluntary petition for bankruptcy and remains a non-debtor in these or any other proceedings.

### 1.9.     **Significant Events During the Bankruptcy Case.**

Describe significant events during the Debtors' bankruptcy case, which may include:

- On February 9, 2022, the Debtors filed Joint Chapter 11 Voluntary Petition, Small Business Subchapter V (Docket No. 1).
- On February 9, 2022, Certificates of Credit Counseling by Pankaj and Varsha Desai were filed. (Docket Nos. 2 and 3)
- On February 10, 2022, the Office of the U.S. Trustee appointed Nancy Isaacson as the Subchapter V Trustee (Docket No. 4).
- On February 10, 2022, Debtors' counsel filed an Application for Retention of Professional Politan Law, LLC as Debtors' bankruptcy attorney (Docket No. 6).
- On February 25, 2022, the Debtors filed Tax Information for the Year 2020 (Docket No. 15).
- On March 1, 2022, the Debtors filed a Statement that No Documents Required by

U.S.C. 1116 Have Been Filed or Prepared (Docket No. 16).
- On March 9, 2022, the Court entered an Order Granting Debtors' Application to Employ Politan Law. LLC (Docket No. 18).
- On March 15, 2022, Debtors' counsel filed Status Report for Subchapter V on behalf of the Debtors (Docket No. 21).
- On March 16, 2022, the Section 341(a) Meeting of Creditors was conducted by the Office of the United States Trustee.
- On March 28, 2022, Debtors' counsel filed Debtors' Monthly Operating Report for Filing Period of February 2022 (Docket No. 22).
- On March 29, 2022, the Initial Status Conference was held before the Hon. John K. Sherwood.
- On April 21, 2022, Debtors' counsel filed Debtors' Monthly Operating Report for Filing Period of March 2022 (Docket No. 23).

### 1.10.    Projected Recovery of Avoidable Transfers

The Debtors do not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

### ARTICLE 2
### THE PLAN

The Debtors' Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

### 2.1.    Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.      Administrative Expenses

The Debtors must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtors and the Administrative Claimant or court order.   If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtors trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtors after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtors and its trade Creditors.

2. If the Debtors received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtors during the course of the Chapter 11 cases.  These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtors' estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 | Paid in full in the ordinary course of business or on the Effective Date. |
| Administrative Tax Claim | $0.00 | Paid in full on the Effective Date. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | $0.00 | Paid in full on the Effective Date. |

| | | |
|---|---|---|
| Politan Law, LLC | $25,000.00-estimate | Paid on the Effective Date or within 10 days of entry of an Order approving the application for allowances under Section 330 |
| Nancy Isaacson, Subchapter V Trustee | $5,000.00-estimate | Paid on the Effective Date or within 10 days of entry of an Order approving the application for allowances under Section 330 |
| **TOTAL** | **$30,000.00** | |

B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount | Date of Assessment | Treatment |
|---|---|---|---|
| The Internal Revenue Service (Proof of Claim No. 1 in the Claims Register) asserting a claim in the amount of $8,447.60 as a priority claim and $17,097.88 as a general unsecured claim | $8,447.60 | December 31, 2021 estimated income (priority); December 31, 2016 estimated income (general unsecured) | Payment Interval = Quarterly Begin Date = 1st Quarter following Effective Date End Date =20th Quarter following Effective Date Interest Rate % =0.00 Annual Payment = $422.38 Total Payment = $8,447.60<br><br>$17,097.88 as a general unsecured claim to be treated in Class 2 described below. |

## 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

In addition, certain claims secured only by the Debtors' principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtors' secured prepetition Claims and their proposed treatment under the Plan:

| CLASS | DESCRIPTION | INSIDER | IMPAIRED | TREATMENT |
|-------|-------------|---------|----------|-----------|
| 1 | Class One consists of a Secured Claim held by TrustCo Bank against real property located at 39 Walker Avenue, Closter, New Jersey.  The creditor did not file a Proof of Claim but its claims were listed on Schedule D in the as secured claim.<br><br>Allowed Secured Amount<br>= $461,000.00-Mortgage<br>= $186,722.18-Line of Credit<br><br>Total- $647,722.18 | No | No | Class One claim holder shall retain the lien it held as same existed immediately prior to the Petition Date up to the amount of its allowed secured claim.<br><br>Monthly Payment = $2,235.00<br>Lien Treatment = Unaffected |

### B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

*The Debtors do not owe any Priority Unsecured Claims.*

### C. Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|----------------|-----------|
| 2 | Class Two are holders of General Unsecured Claims, including allowed deficiency claims of creditors in | Yes | In accordance with the Debtors' cash flow analysis and Financial Projections (annexed as **Exhibit C** to this Plan) the Debtors have a projected Disposable Income of approximately $47,892.00 annually (as defined in Section |

| | | prior classes and claims of creditors not otherwise classified under the Plan. The estimated amount of unsecured claims as scheduled or filed is **$2,216,566.59.** | | 1325(b)(2) and 707(b)(2)(A) of the Bankruptcy Code) or $224,257.39 over the life of the Plan, all of which will be paid as follows:<br><br>Commencing on the first quarter (3 months) following the Effective Date of the Plan and quarterly thereafter for a total of 5 years, the Debtors shall make payments in an amount equal to one-quarter (1/4) of annual projected disposable income of the Debtors (and as projected in the cash flow analysis, annexed as **Exhibit C**). The Debtors shall distribute the funds to the holders of liquidated, non-contingent claims as scheduled or filed, subject to timely objection to the validity or extent of each claim and the claims of creditors not otherwise treated under the Plan (the "General Unsecured Claims") on a *pro-rata* basis commencing three months after the Effective Date and quarterly thereafter during the life of the five years of the Plan.<br><br>At the conclusion of the 20 quarterly payments over 5 years of the Plan, the Debtors shall provide for a balloon payment of the remaining balance from a refinance of the real property to provide a 14.5% dividend *pro rata* to General Unsecured Creditors.   The amount necessary to fund the balloon payment is estimated to be $97,000.00.<br><br>Following the Effective Date, in the event, the Debtors default on any quarterly payment or final payment under the Plan, and such default is not cured within 30 days of written notice being provided from a Creditor, the Debtors shall commence and conduct a sale of their primary residence (39 Walker Avenue, Closter, NJ) to satisfy all claims of Creditors under the Plan, in accordance with its terms.   To the extent necessary, the Debtors shall seek to modify the Plan pursuant to Section 6.6, to accomplish the sale and provide distributions of the full dividend amounts outstanding to Class 2 Creditors yielding a 14.5% dividend. |

D.  Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in

the Debtors.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtors are the Equity Interest holder.  The Debtors are individuals and there are not classes of Equity Interest holders.

## 2.3    <u>Estimated Number and Amount of Claims Objections</u>.

The Debtors may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtors will pay the Allowed Claim in accordance with the Plan.

The Debtors have reviewed all the Proof of Claims filed to date. Debtors do not object to any filed claim at his time but shall retain the right to dispute any proofs of claim filed in accordance with the Plan.

## 2.4.    <u>Treatment of Executory Contracts and Unexpired Leases.</u>

Executory Contracts are contracts where significant performance of the contract remains for both the Debtors and another party to the contract.  The Debtors have the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtors' intentions regarding their Executory Contracts (which includes their unexpired leases) and the impact such intentions would have on the other parties to the contracts. The Debtors will assume the executory lease with Benzl Bush Motor Car Corp. ("Benzl"). The unexpired Benzl Lease terminates on its own terms in June 2023 and currently there is no cure amount as there is no arrearage due on the lease. Although the Benzl Lease is countersigned by Pankaj Desai, payments are made and will continue to be made by the Corporation.

On the Effective Date, all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtors in writing or previously assumed by Court Order, shall be deemed rejected. The order confirming the Plan shall constitute an order approving the rejection of any such lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS FIXED BY D.N.J. LBR 3003-1(b).** Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise

## 2.5.    <u>Means for Implementation of the Plan.</u>

The Debtors will fund the Plan with their net disposable income for a period of five (5) years from the Effective Date and make *pro rata* quarterly payments.  On Confirmation of the Plan, all property of the Debtors, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtors.

The Debtors expect to have sufficient cash on hand to make the payments required on the Effective Date.  The Plan will be funded from a combination of (i) funds on hand at the time of Confirmation; (ii) future income generated through their employment and sublet of room in primary residence; and (iii) refinance of real property located at 39 Walker Avenue to fund a final balloon payment equal to the proposed dividend.  Alternatively, upon any payment default under the Plan which is not cured within 30 days of written notice, the Debtors will sell the real property to fund the Plan payments.  The cash flow analysis and financial projections annexed as **Exhibit C** illustrates the amount of income received and the resulting net Disposable Income.

### 2.6. **Payments.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtors shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

### 2.7. **Post-Confirmation Management.**

The Debtors will manage their Plan of reorganization post-confirmation.

### 2.8. **Tax Consequences of the Plan.**

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtors. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Generally, a holder of a Claim which is subject to taxation in the United States (a "Taxpayer-Claimant") will realize income or loss for federal and state income tax purposes if its Claim is paid, unless such income or loss has previously been recognized, to the extent that such a payment would have created income or loss if paid by the Debtors outside the jurisdiction

of the Bankruptcy Court.

A Taxpayer-Claimant which receives nothing or less than the full amount with respect to its Claim will realize a loss for federal and state income tax purposes to the extent that the Taxpayer-Claimant's tax basis in the Claim exceeds its recovery, except to the extent that a loss with respect to such Claim has previously been recognized.

There are complex issues which arise whenever debt is not paid in full, and only a limited summary of the rules can be given here. Taxpayer-Claimants should consult with their own tax advisors as to the impact of these rules on their particular situation.

### 2.9.    Projections in Support of Debtors' Ability to Make Payments Under the Proposed Plan

The Debtors have projected their income and expenses over a five-year period commencing upon the Effective Date. The projections are based on an analysis of historical expenses, and current and foreseeable needs. Those projections are illustrated on the attached as **Exhibit  C**.

## ARTICLE 3
## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.    Ability to Initially Fund Plan.

The Debtors believes that they will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  The Plan will be funded from a combination of (i) funds on hand in the estate at the time of Confirmation; and (ii) Debtors' generated income.  Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are below:

| | |
|---|---|
| Cash anticipated on hand on the Effective Date: | $33,450.00 |
| **Less:** | |
| Amount of Administrative Expenses payable on effective date of Plan (less retainers) | ($20,000.00) |
| | $13,450.00 |
| The sources of the cash the Debtors will have on hand by the Effective Date are estimated as follows: | |
| Total cash in the Debtors' bank account (as of 3/31/22) | **$29,484.72** |

### 3.2. **Ability to Make Future Plan Payments And Operate Without Further Reorganization**.

The Debtors must submit all or such portion of the future earnings or other future income of the Debtors to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtors have provided projected financial information. Those projections are listed in **Exhibit C** (referenced in § 2.9, above).

The Debtors' financial projections show that the Debtors will have an aggregate annual average cash flow, after paying operating expenses and post- confirmation taxes, of between $41,750.15 and $47,892.00. The final Plan payment is expected to be paid five (5) years following the Effective Date and will include a final balloon payment to be funded from a refinance of the real property.  That final payment is estimated to be approximately $97,000.00.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

### ARTICLE 4
### LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A Liquidation Analysis is attached hereto as **Exhibit D**. As illustrated in the Liquidation Analysis, all Creditors and Equity Interest holders would receive more through this Plan that if it were a case under Chapter 7.

### ARTICLE 5
### DISCHARGE

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtors of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtors after the order for relief under this chapter, the court shall grant the Debtors a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6
## GENERAL PROVISIONS

### 6.1.  Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtors, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtors.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtors acquires, as well as earnings from services performed by the Debtors, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtors shall remain in possession of all property of the estate.

### 6.2.  Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtors and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.  Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.  Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtors, including preference and fraudulent transfer causes of action.

### 6.5.  Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. <u>Modification of Plan.</u>

The Debtors may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtors may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtors may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. <u>Final Decree.</u>

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

### ARTICLE 7
### <u>ATTACHMENTS</u>

The following documents accompany the Plan:

[X]   Debtors' Assets -summary annexed as **Exhibit A**.
[X]   Debtors' Liabilities – summary annexed as **Exhibit B**
[X]   Debtors' Financial Projections and cash flow analysis, annexed as **Exhibit C**
[X]   Debtors' Liquidation Analysis, annexed as **Exhibit D**.

### ARTICLE 8
### <u>FREQUENTLY ASKED QUESTIONS</u>

**What Are the Debtors Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor's attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtors may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the

manner and the means by which holders of claims against a debtors will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtors solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtors, the Bankruptcy Court may confirm the Plan as proposed by the Debtors.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtors. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtors and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtors may not pay creditors as proposed in the Plan while the Debtors remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtors whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtors and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 of Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which

ballots must be returned is seven (7) days before the Confirmation hearing date.   Ballots should be mailed to the following address:

**Politan Law, LLC**
**c/o Mark J. Politan, Esq.**
**88 East Main Street, #502**
**Mendham, New Jersey 07945**

**How Do I Determine When and How Much I Will Be Paid?**  In Section 2.2, the Debtors have provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan
.

## ARTICLE 9
## DEFINITIONS

**9.1.**     The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code

**9.2.**     **Administrative Claimant**:  Any person entitled to payment of an Administration Expense.

**9.3.**     **Administrative Convenience Class:**     A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.**     **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtors' estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtors-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtors' estates under Chapter 123, Title 28, United States Code.

**9.5**     **Administrative Tax Claim**:  Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.**     **Allowed Claim**: Any claim against the Debtors pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtors, and (b) as to which either (i) a party in interest, including the Debtors, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.**     **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has

become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtors' bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtors or Debtors-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtors, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Pankaj and Varsha Desai are the Debtors-in-Possession.

**9.15     Claim**: Any "right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no

longer in effect.

**9.19.    Confirmation Hearing**: The hearing to be held on **[TBD]** to consider confirmation of the Plan.

**9.20.    Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtors that arose on or before the Petition Date.

**9.22.    Debtors** and **Debtors-in-Possession**: Pankaj and Varsha Desai, the debtors-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtors pursuant to Section 502 of the Code that the Debtors have in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest**: An ownership interest in the Debtors.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC**: The Internal Revenue Code.

**9.30.    Petition Date**: February 9, 2022, the date the joint chapter 11 petition for relief was filed.

**9.31.    Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtors**: The Debtors after the Effective Date.

**9.34.    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtors with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtors.

**9.36.    Trustee**:  Nancy Isaacson, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Dated: May 10, 2022                                Respectfully submitted,


                                                   By:   */s/ Mark J. Politan*

                                                   **POLITAN LAW, LLC**
                                                   88 East Main Street, #502
                                                   Mendham, New Jersey 07945
                                                   (973) 768-6072
                                                   mpolitan@politanlaw.com


                                                   *Counsel for the Pankaj and Varsha Desai*